## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clinty Nelson,**
**Petitioner Below, Petitioner**

**FILED**

February 11, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 11-1487** (Mingo County 06-C-396)

**David Ballard, Warden**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Clinty Nelson, by counsel, Ashley Dingess Cochran, appeals the circuit court's order entered March 14, 2011, denying his petition for writ of habeas corpus. Warden Ballard[1] of Mount Olive Correctional Complex, by counsel Benjamin F. Yancey, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the appendix record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was found guilty by a jury on March 31, 2005, of first degree murder, kidnapping, first degree sexual assault, and three counts of conspiracy. Petitioner was sentenced to two consecutive life sentences without mercy, plus eighteen to fifty years of incarceration. Petitioner's direct appeal was denied by this Court on May 26, 2006. On October 3, 2006, petitioner filed a petition for writ of habeas corpus on seven different bases: ineffective assistance of counsel, failure of the prosecutor to present testimony of three individuals with exculpatory evidence, double jeopardy, ineffective assistance of counsel on direct appeal, prosecutorial misconduct, insufficient evidence to establish that petitioner was guilty beyond a reasonable doubt, and admission of gruesome photographs. The circuit court issued a lengthy order entered on March 14, 2011, denying relief on all counts. Petitioner now appeals the denial of his habeas corpus petition below.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the respondent party's name with Warden David Ballard. The initial respondent on appeal, Thomas McBride, is no longer the warden of Mount Olive Correctional Complex.

underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

On appeal, petitioner argues that the circuit court erred in finding no ineffective assistance of counsel, arguing that counsel was ineffective in: (1) failing to object to prejudicial comments made by the prosecutor, (2) failing to call witnesses to impeach the credibility of two co-defendants, (3) failing to call doctors to impeach the credibility of co-defendant Zandell Bryant, (4) failure to object to a trooper's testimony regarding DNA testing, (5) failure to request DNA testing that could have shown petitioner's semen was not inside the victim, and (6) failure to ask petitioner's expert witness and treating physician whether petitioner was physically able to commit the crimes for which he was being tried. Petitioner states that "each omission by trial counsel, when considered individually, caused trial counsel's performance to fall below the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law . . . [and that w]hen all omissions are [considered] together, trial counsel's performance most certainly" was ineffective."

The State responds that petitioner did not show an abuse of discretion by the court below. Specifically, the State argued that none of the comments made by prosecution were prejudicial to the petitioner. The State argues that impeaching the witnesses was unnecessary because trial counsel exposed inconsistencies during cross-examination, and that the state trooper's testimony about DNA was an obvious statement, not, as petitioner says, expert testimony. Finally, the State argues that the "failure" to seek DNA evidence or ask about petitioner's physical ability to commit the crime were strategic decisions to avoid risking further incrimination of the petitioner.

The Court has carefully considered the merits of each of petitioner's arguments as set forth in his petition for appeal. Finding no error in the denial of habeas corpus relief, the Court incorporates and adopts, the circuit court's detailed and well-reasoned "Final Order Denying Petitioner's Petition for Writ of *Habeas Corpus*" entered March 14, 2011, insofar as it addresses the assignments of error appealed herein, and directs the Clerk to attach the same hereto.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: February 11, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

CIVIL ORDER
BOOK

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

CLINTY NELSON,

Petitioner,

v.

Civil Action No.: 06-C-396
Honorable Michael Thornsbury

THOMAS MCBRIDE, WARDEN,

Respondent.

### FINAL ORDER DENYING PETITIONER'S OMNIBUS PETITION FOR WRIT OF *HABEAS CORPUS*

This matter comes before the Court pursuant to the Petitioner, Clinty Nelson's, Motion for Habeas Corpus relief pursuant to the West Virginia Post Conviction Habeas Corpus Act, West Virginia Code § 53-4A-1, et seq. (1994). Previously the Court ordered this matter to be treated as an Omnibus Habeas Corpus action and directed counsel to address all *Losh v. McKenzie*, 166 W.Va. 762 (1981) factors. The parties appeared as follows the Petitioner, Clinty Nelson, via video teleconference, and through counsel, Cecil Varney; and the Respondent Thomas McBride through counsel, Michael Sparks, Prosecuting Attorney. The Court now makes the following Findings Of Fact And Conclusions Of Law and Orders, to wit:

### Procedural History

1. On October 3, 2006, the Petitioner, Clinty Nelson, filed the instant, pro se, Motion for Writ Of Habeas Corpus Relief with this Court asserting ineffective assistance of counsel, failure of the prosecutor to present testimony of three individuals with exculpatory evidence, double jeopardy, ineffective assistance of counsel of direct

 

appeal, prosecutorial misconduct, insufficient evidence to establish guilty beyond a reasonable doubt, and admission of gruesome photographs.

2. Mr. Nelson also completed a *Losh* checklist in which he asserts prejudicial pre-trial publicity, mental competency at the time of the offense (witnesses), mental competency at the trial of witnesses, suppression of helpful evidence by the prosecutor, State's knowing use of perjured testimony, falsification of transcript by prosecutor, ineffective assistance of counsel, double jeopardy, irregularities in arrest, excessiveness or denial of bail, illegal detention prior to arraignment, irregularities or errors in arraignment, challenges to the composition of grand jury or its procedures, pre-indictment delay, refusal of continuance, refusal to subpoena witnesses, nondisclosure of grand jury minutes, claim of incompetence at time of offense, claims concerning use of informers to convict, constitutional errors in evidentiary rulings, claims of prejudicial statements by the prosecutor, sufficiency of evidence, more severe sentences than expected, excessive sentence, and denial of due process and equal protection of the law. Each of the remaining claims under the *Losh* checklist were waived by Petitioner.

3. The Petitioner was indicted by the January 2005 Mingo County Grand Jury on six (6) separate counts relating to the death of Wanda Lesher: First Degree Murder, Kidnapping, Sexual Assault in the First Degree, and three (3) counts of Conspiracy.

4. On March 31, 2005, the Mingo County Circuit Petit Jury returned its verdicts finding the Petitioner guilty of First Degree Murder, Kidnapping, First Degree Sexual Assault, and three (3) counts of Conspiracy.

2

5. On May 11, 2005, the Court sentenced Mr. Nelson to two (2) life sentences without mercy for the First Degree Murder and Kidnapping; a term of not less than fifteen (15) nor more than thirty-five (35) years for the First Degree Sexual Assault; and an indefinite term of not less than one (1) year nor more than five (5) years on each of the Conspiracy convictions with the sentences to run consecutively.

6. Mr. Nelson filed a notice of intent to appeal on May 17, 2005. An Order from the West Virginia Supreme Court of Appeals was entered on May 26, 2006, refusing Mr. Nelson's appeal.

7. The Court held an Omnibus Hearing on November 26, 2007.

8. On January 31, 2008, Mr. Nelson filed an Amended Petition For Writ Of Habeas Corpus Ad Subjiciendum.

9. Mr. Nelson's appeal to the West Virginia Supreme Court of Appeals was again denied on February 28, 2008.

<u>Findings Of Fact</u>

1. During the Omnibus Evidentiary Hearing in this matter Reverend McCloud testified as follows:

   a. That he gave a statement in this matter and signed it.

   b. Reverend McCloud acknowledged that he cannot remember whether three (3) or four (4) lawyers came to see him.

   c. Reverend McCloud acknowledged that he could not remember if anyone spoke with him prior to the trial in the underlying criminal matter.

    d. Reverend McCloud acknowledged that he told the attorneys that he did

       not know much about anything in the underlying criminal matter.

2. During the Omnibus Evidentiary Hearing in this matter Miles McCloud testified as follows:

    a. That Mr. McCloud does not recall speaking with Don McDaniel, Petitioner's prior Habeas counsel.

    b. Mr. McCloud admitted that he spoke with Tom Esposito.

    c. Mr. McCloud denied making a statement in the matter.

3. During the Omnibus Evidentiary Hearing in this matter Ricky Nelson testified as follows:

    a. Mr. Nelson acknowledged that he made a statement in this matter.

    b. Mr. Nelson stated, "I probably talked to Ernest Skaggs."

4. During the Omnibus Evidentiary Hearing in this matter Hugh Tomblin testified as follows:

    a. Mr. Tomblin cannot read.

    b. Mr. Tomblin acknowledged his signature on his statement.

    c. Mr. Tomblin asserted that he never spoke with Ernest Skaggs.

5. During the Omnibus Evidentiary Hearing in this matter Granville Vance testified as follows:

    a. Mr. Vance cannot read.

    b. Mr. Vance claimed that he does not know Alvie Spaulding.

    c. Mr. Vance asserted that he never spoke with a lawyer regarding this matter.

6. During the Omnibus Evidentiary Hearing in this matter Alvie Spaulding testified as follows:

 a. Mr. Spaulding acknowledged that he probably spoke with Ernest Skaggs.

7. During the Omnibus Evidentiary Hearing Auddie Nelson testified as follows:

 a. Mr. Nelson is the father of the Petitioner.

 b. Mr. Nelson cannot read.

 c. That the newly discovered evidence is that he spoke with a night watchman but does not know who that individual is.

 d. That Mr. Nelson spoke with the watchman just a few days after the murder.

8. During the Omnibus Evidentiary Hearing Bernard Spaulding testified as follows:

 a. Mr. Spaulding has been an attorney for thirty-five (35) years.

 b. Mr. Spaulding reviewed the trial transcript and the Habeas Petition in this matter.

 c. There was a jury trial in this matter on March 29, 2005.

 d. The evidence during the trial was based upon the testimony of two co-defendants, Alfred Dingess, Jr. and Zandell Bryant.

 e. Mr. Spaulding did not see the alleged gruesome photographs admitted during the trial.

 f. Mr. Spaulding has not reviewed the pre-trial transcripts and is unaware of the efforts Mr. Skaggs took to keep the photographs excluded.

 g. The prosecuting attorney said "well if you are a Christian" and Mr. Nelson's trial counsel should have objected.

5

h. The prosecuting attorney stated in his opening statement that "Alfred Nelson was convicted of First Degree Murder" and trial counsel should have objected.

i. The prosecuting attorney stated during the trial that Mr. Nelson and his brothers were already convicted and trial counsel should have objected.

j. During the prosecution's closing argument, the prosecutor stated you "can't humanize the victim" and trial counsel should have objected.

k. The prosecutor made additional comments but Mr. Spaulding cannot say they were objectionable or inflammatory.

l. Trial counsel did not hire an investigator.

m. Mr. Spaulding acknowledged that he is unaware if trial counsel moved for a change of venue, and he is unsure how much publicity there was in the underlying criminal matter.

n. The prosecutor introduced a lot of hearsay evidence and used leading questions and trial counsel did not object.

o. Trial counsel only objected seven times during a three day trial.

p. The competency of Alfred Dingess and Zandel Bryant was questionable and not impeached with their testimony in earlier trials.

q. DNA testing was not completed and should have been.

r. The investigating officer stated during trial that the DNA could not be tested because of the mixture of semen.

s. There is no evidence that trial counsel hired a DNA expert and he let the investigating officer give DNA opinions.

t. Mr. Skaggs told him he had diabetes and the Court admonished Mr. Skaggs for screaming at a witness.

u. The eight or nine witness attached to the Omnibus Petition were not presented at trial and trial counsel should have used them to impeach Alfred Dingess and Zandel Bryant.

v. Mr. Spaulding asserted that Mr. Skaggs representation of the Petitioner during the trial fell below the standard of conduct and resulted in prejudicial result.

w. Mr. Spaulding acknowledged that the Court instructed the jury not to consider the opening and closing statements as evidence.

x. Mr. Spaulding acknowledged that he was unaware the Court completed a balancing test on the gruesome photographs.

y. That the injuries suffered by the victim could be evidence of whether the murder was malicious.

z. Mr. Spaulding acknowledged that two co-defendants were tried prior to the Petitioner's case.

aa. Mr. Spaulding acknowledged that sometimes too many objections can inflame the jury and objections are to some extent a manner of style.

bb. Mr. Spaulding asserted that it could not be a strategic decision not to ask for DNA testing.

cc. The witnesses that gave statements could have been known to the Petitioner.

9. During the Omnibus Evidentiary hearing in this matter the Petitioner testified as follows:

    a. The Petitioner filed a Motion for DNA testing.

    b. The Petitioner denied being a perpetrator in the murder of the victim, Wanda Lesher.

10. The Petition asserts that the only evidence against Mr. Nelson is the testimony of Alfred Dingess and Zandel Bryant and there is no physical evidence linking him to the crime. Semen samples were taken from the victim and were not tested and the DNA results could have established a reasonable doubt if the Petitioner's DNA was not present in the sample and the prosecutor's argument requires proof of a negative. Finally, the Petitioner argues that, contrary to the State's assertion that the DNA in the sample could not be tested, it was possible to test the samples prior to the trial.

11. In response, the State asserts that even had the semen not been identified as the Petitioner's that would not establish a lack of sexual intercourse. Additionally, the State asserts that that newly discovered evidence may not be used for the sole purpose of discrediting or impeaching the State's witnesses, which is the only purpose in this matter. The State also asserts that the jury received the exculpatory evidence that the DNA was not tested and there was no positive DNA result for the Petitioner. Finally, the State argues that the Petitioner and his counsel did not attempt to test the sample prior to trial and could have tested the sample to establish exculpatory evidence at trial, but chose not to do so.

8

12. The Petitioner also asserts that the report of Dr. Pamela Ryan regarding her psychological assessments of Alfred Dingess and Zandel Bryant should have been obtained by trial counsel and utilized during the trial. The Petitioner claims that the reports, which indicated malingering and deceiving aspects, could have been used at trial from impeachment. The reports also indicate that Mr. Bryant did not mention the Petitioner during his psychological assessment. Dr. Ryan's report indicated further that Mr. Bryant was malingering and gave inconsistent information when he denied involvement with the crime.

13. The State asserts that Mr. Skaggs zealously cross-examined the co-defendants at trial regarding their inconsistencies and the aforementioned evidence is cumulative. Further, the State argues that none of the co-defendants called Dr. Ryan as a witness.

## Conclusions Of Law

1. West Virginia Code § 53-4A-1(a) provides, in relevant part:

> Any person convicted of a crime and incarcerated under sentence of imprisonment therefore who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by low, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions

of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence.

2. West Virginia Code § 53-4A-3, directs that a writ of habeas corpus be granted if it appears to the Court that there is probable cause to believe that the Petitioner may be entitled to some relief, and the contentions or grounds advanced have not been previously and finally adjudicated or waived.

## A. Denial Of Right To Counsel / Ineffective Assistance Of Counsel / Failure Of Counsel To Take Appeal

3. The Petitioner asserts that his trial counsel, Ernest Skaggs, failed to fully and adequately represent him during the underlying criminal trial, and he makes the following arguments in reference thereto. First, the Petitioner asserts his trial counsel failed to object to improper and prejudicial remarks made by the Prosecuting Attorney during the criminal trial. Second, that the Prosecuting Attorney spoke about Aaron Nelson being previously convicted by a different petit jury and, once again, Mr. Skaggs failed to object. Third, Mr. Skaggs failed to hire an independent investigator. Fourth, Mr. Skaggs did not question the competency of Zandel Bryant and Alfred Dingess, Jr. during their testimony. Fifth, Mr. Skaggs failed to conduct independent DNA testing on the semen sample recovered from the victim. Finally, Mr. Skaggs failed to present all potentially favorable witnesses for the Petitioner.

4. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

10



that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

5. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687; see also, syllabus point 5, *State v. Miller*, 194 W.Va. 3 (1995); *State ex rel. Shelton v. Painter*, 221 W.Va. 578 (2007).

6. "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus point 6, *Miller*.

7. "In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he

11

exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case will be regarded as harmless error." Syllabus point 19, *State v. Thomas*, 203 S.E.2d 445 (1974).

8. Under Strickland there must first be a showing that trial counsel's performance was deficient and the errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.

9. The Court FINDS that to succeed under a claim for ineffective assistance of counsel, Petitioner must make a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment of the Unite States Constitution. See *Miller*.

10. The Court FINDS that Mr. Skaggs has tried numerous criminal matters in the State of West Virginia and has an adequate understanding of criminal trials.

11. The Court FINDS that Mr. Skaggs's performance during the underlying cause of action was not deficient.

12. The Court FINDS that Mr. Skaggs's representation was adequate under the first prong of *Miller*, and Mr. Nelson has not made a showing that Mr. Skagg's performance prejudiced his defense at trial.

13. The Court FINDS that in reviewing the performance of counsel, the Court must apply an objective standard and must not engage in hindsight or second-guessing of trial counsel's strategic decisions.

14. The Court FINDS that there is no reasonable likelihood that the Jury Verdict would have been different had trial counsel performed differently at trial pursuant to the second standard of *Strickland*.

15. Petitioner also asserts ineffective assistance of counsel on appeal; however, a review of the underlying criminal filed indicates that Petitioner's counsel withdrew after completion of the underlying criminal trial.

16. The record does not reflect any indication from Mr. Nelson of his wishes concerning an appeal and appointment of counsel for the purposes of accomplishing such an appeal. However, counsel was appointed to Mr. Nelson and his appeal was denied by the West Virginia Supreme Court of Appeals.

17. Petitioner also failed to present any evidence during the Omnibus Evidentiary Hearing in this matter concerning any ineffective assistance of counsel on direct appeal and the same is hereby waived.

18. Accordingly, Petitioner's asserted grounds for relief regarding ineffective assistance of counsel is without merit and the instant Petition is **DENIED**.

## B. State's Failure To Disclose Exculpatory Evidence

19. Petitioner asserts that the Prosecuting Attorney failed to call three individuals, Hugh Tomblin, Doctor Pamela Ryan, and Bobby Miller.

20. "There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963) and *State v. Hatfield*, 169 W.Va. 191 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been

13

suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syllabus point 2, *State v. Youngblood*, 221 W.Va. 20 (2007).

21. "The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good of bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

22. In *State v. Osakalumi*, 194 U.S. 758, 764 (1995), the West Virginia Supreme Court of Appeals held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

23. "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." Syllabus point 4, *State v. Hatfield*, 169 W.Va. 191 (1982).

24. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotations omitted).

25. Under *Brady* in order for the exculpatory evidence to be admissible and thus result in constitutional error in the failure to admit the same the defendant must make a showing that the evidence was material to his case and he was prejudiced by the State's failure to disclose.

26. First, Mr. Nelson asserts that Hugh Tomblin testified during his brother, Aaron Nelson's trial and indicated that during that trial Mr. Tomblin testified that Alfred Dingess, Jr., approached him and attempted to sell him the victim's car. During the Petitioner's trial Mr. Tomblin was not called as a witness and the Petitioner asserts that Mr. Tomblin was not called as a witness because the Prosecuting Attorney was implying that Mr. Dingess was directed to burn the car for money.

27. Second, the Petitioner asserts that Dr. Pamela Ryan should have been called during his trial to testify regarding her evaluation of Zandell Bryant and Alfred Dingess, Jr. and that her testimony would have shown that the co-defendants were lying at the trial and were incompetent to testify.

28. Third, Mr. Nelson asserts that psychologist Bobby Miller should have been called at trial to testify regarding his evaluation of Mr. Bryant to impeach his credibility.

29. The Petitioner did not present any evidence during the Omnibus Evidentiary Hearing which would support his assertions regarding the testimony of Hugh Tomblin. Also, Petitioner did not present any evidence regarding the potential impeachment evidence regarding the mental competency of Zandell Bryant and Alfred Dingess, Jr. through the testimony of Dr. Pamela Ryan and/or psychologist Bobby Miller.

15

30. Under *Brady* in order for evidence not previously disclosed at trial to be material the defendant must make a showing that had the evidence been presented at trial the outcome would have been different.

31. The Court **FINDS** that the instant evidence does not rise to the level required by Brady for materiality and had the evidence been presented at trial it is highly unlikely that the result would have been any different had the witnesses been available at trial in the underlying cause of action.

32. The Court **FINDS** that the Petitioner has presented no evidence sufficient for a showing that Brady was violated in terms of the failure to call the three witnesses at his trial and his assertion of the same is without merit.

33. Finally, the Petitioner asserts that Hugh Tomblin lied in his brother, Aaron Nelson's, trial and that the State had knowledge of the same.

34. "In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that: (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." Syllabus point 2, State ex rel. Franklin v. McBride, --- W.Va. ---, ---S.E. 2d ---, 2009 WL 3255136 (W.Va. 2009).

35. "Prosecutors have a duty to the court not to knowingly encourage or present false testimony." Id. (quoting State v. Rivera, 109 P.3d 83, 89 (Ariz. 2005)).

36. Under the first prong of *Franklin* Mr. Nelson must make a showing that the state presented false testimony. The Petitioner has presented no evidence either in his

16

Habeas Motion or during the Omnibus Hearing to make a sufficient showing that the State presented perjured testimony during the trial.

37. The Court FINDS that Hugh Tomblin was not called during the Petitioner's trial and it is mere speculation regarding Mr. Tomblin's testimony had he, in fact, testified during the Petitioner's trial.

38. The Court FINDS that the Petitioner is unable to meet the first requirement under *Franklin* to make a showing that the prosecutor presented false testimony.

39. Since the Petitioner is unable to meet the first prong of *Franklin* it is not necessary to analyze the remaining two prongs of *Franklin*.

40. Accordingly, the Petitioner's asserted grounds for relief for failure to disclose exculpatory evidence is without merit and the instant petition is **DENIED**.


### C. Double Jeopardy

41. Mr. Nelson asserts that his right to be free of double jeopardy was violated when his original indictment was nolled and he was later re-indicted for the same crimes.

42. West Virginia Constitution Article III, Section 5, provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offense. No person shall be transported out of, or forced to leave the state for any offense, committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence.

43. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having



jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after a conviction. It also prohibits multiple punishments for the same offense." Syllabus point 1, *Connor v. Griffith*, 160 W.Va. 680 (1977); Syllabus point 1, *State ex rel. Taylor v. Janes*, --- W.Va. ---, ---S.E.2d ---, 2010 WL 1408249 (W.Va. 2010).

44. "In order to establish a double jeopardy claim, the defendant must first present a prima facie claim that double jeopardy principles have been violated. Once the defendant proffers proof to support a nonfrivolous claim, the burden shifts to the State to show by a preponderance of the evidence that double jeopardy principles do not bar the imposition of the prosecution or punishment of the defendant." Syllabus point 2, *State v. Sears*, 196 W.Va. 71 (1996).

45. The Petitioner was indicted during the January 2005 term of the Mingo County Grand Jury and the indictment charged the Petitioner with additional charges not included in his original indictment.

46. "One is in jeopardy when he has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn." Syllabus Point 1, Adkins v. Leverette, 164 W.Va. 377 (1980).

47. The Court FINDS that the Petitioner was indicted on two separate occasions and that the first indictment was nolled and the State proceeded on the second Indictment.

18

48. The Court **FINDS** that the Petitioner was arraigned and entered a not guilty plea in the first indictment; however, Mr. Nelson never went to trial nor was a jury impaneled in that matter prior to the filing of the second indictment.

49. The Court **FINDS** that double jeopardy did not apply in the Petitioner's second indictment as he never entered a guilty plea and he case did not go before a jury.

50. Accordingly, the Petitioner's asserted grounds for relief on double jeopardy grounds are without merit and the same is hereby **DENIED**.

### D. Prosecutorial Misconduct / Falsification Of Transcript / Prejudicial Comments

51. The Petitioner asserts that various comments made by the Prosecuting Attorney during his trial were highly prejudicial and inflammatory to the jury. These comments included reference to the victim's family, his own family, discussion of the victim's family's suffering, and reference to Aaron Nelson's prior conviction. However, as noted above, these allegedly improper statements were not objected to at trial by the Petitioner's counsel.

52. "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." *State v. Justice,* 191 W.Va. 261, 269 (1994) (citing syllabus point 7, *State v. Cirullo,* 142 W.Va. 56 (1956)).

53. The Court **FINDS** that the Petitioner's trial counsel did not object to the prosecutors statements during the course of the trial. The Petitioner admits as much as he cites the failure to object in his ineffective assistance of counsel claim.

54. Thus, the prosecutor's allegedly improper statements are not proper grounds for relief and the same is hereby **DENIED**.

### E. Failure To Test The DNA Sample

55. Finally, the Petitioner asserts that the failure to test DNA samples taken from the victim was an error entitling him to relief. The Petitioner argues that such testing could have established he was not the perpetrator. Additionally, the Petitioner asserts that, despite the State's allegations, the DNA could have been tested prior to the trial. Furthermore, the Petitioner contends that had the DNA not been the Petitioner's it would have discredited the witnesses against him.

56. The State argues that even had the DNA not been that of the Petitioner, it would not have established that he did not commit the crimes for which he was convicted. Further, the State asserts that the lack of DNA testing is not likely to produce a different result at trial, or a more favorable sentence. The State argues that the eye witness testimony was sufficient to convict the Petitioner. Finally, the State contends that it was sufficient that the jury heard that the DNA was not conclusive.

57. In regard to the right to DNA testing, West Virginia Code § 15-2B-14 provides:

> (a) A person convicted of a felony currently serving a term of imprisonment may make a written motion before the trial court that entered the judgment of conviction for performance (DNA) testing.

> (b) (1) An indigent convicted person may request appointment of counsel to prepare a motion under this section by sending a written

20

0144  400

request to the court. The request must include the person's statement that he or she was not the perpetrator of the crime and that DNA testing is relevant to his or her assertion of innocence. The request must also include the person's statement as to whether he or she previously had appointed counsel under this section.

(2) If any of the information required in subdivision (1) of this section is missing from the request, the court shall return the request to the convicted person and advise him or her that the matter cannot be considered without the missing information.

(3) (A) Upon a finding of indigency, the inclusion of information required in subdivision (1) of this section, and that counsel has not previously been appointed pursuant to this subdivision, the court shall appoint counsel. Counsel shall investigate and, if appropriate, file a motion for DNA testing under this section. Counsel represents the indigent person solely for the purpose of obtaining DNA testing under this section.

(B) Upon a finding of indigency, and that counsel has been previously appointed pursuant to this subdivision, the court may, in its discretion, appoint counsel. Counsel shall investigate and, if appropriate, file a motion for DNA testing under this section. Counsel represents the person solely for the purpose of obtaining DNA testing under this section.

(4) Nothing in this section provides for a right to the appointment of counsel in a post-conviction collateral proceeding or sets a precedent for any such right. The representation provided an indigent convicted person under this article is solely for the limited purpose of filing and litigating a motion for DNA testing pursuant to this section.

(c) (1) The motion shall be verified by the convicted person under penalty of perjury and must do the following:

(A) Explain why the identity of the perpetrator was, or should have been, a significant issue in the case.

(B) Explain, in light of all the evidence, how the requested DNA testing would raise a reasonable probability the convicted person's verdict or sentence would be more favorable if the results of DNA testing had been available at the time of conviction.

(C) Make every reasonable attempt to identify both the evidence that should be tested and the specific type of DNA testing sought.

(D) Reveal the results of any DNA or other biological testing previously conducted by either the prosecution or defense, if known.

(E) State whether any motion for testing under this section has been filed previously and the results of that motion, if known.

(2) Notice of the motion shall be served on the prosecuting attorney in the county of conviction and, if known, the governmental agency or laboratory holding the evidence sought to be tested. Responses, if any, shall be filed within sixty days of the date on which the prosecuting attorney is served with the motion, unless a continuance is granted for good cause.

(d) If the court finds evidence was subject to prior DNA or other forensic testing, by either the prosecution or defense, it shall order the party at whose request the testing was conducted to provide all parties and the court with access to the laboratory reports, underlying data, and laboratory notes prepared in connection with the DNA or other biological evidence testing.

(e) The court, in its discretion, may order a hearing on the motion. The motion shall be heard by the judge who conducted the trial or accepted the convicted person's plea, unless the presiding judge determines that judge is unavailable. Upon request of either party, the court may order, in the interest of justice, that the convicted person be present at the hearing of the motion.

(f) The court shall grant the motion for DNA testing if it determines all of the following have been established:

(1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion;

(2) The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;

(3) The identity of the perpetrator of the crime was, or should have been, a significant issue in the case;

(4) The convicted person has made a prima facie showing that the evidence sought for testing is material to the issue of the convicted person's identity as the perpetrator of or accomplice to, the crime,

22

CIVIL ORDER
BOOK

special circumstance, or enhancement allegation resulting in the conviction or sentence;

(5) The requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if DNA testing results had been available at the time of conviction. The court in its discretion may consider any evidence regardless of whether it was introduced at trial;

(6) The evidence sought for testing meets either of the following conditions:

(A) The evidence was not previously tested;

(B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results;

(7) The testing requested employs a method generally accepted within the relevant scientific community;

(8) The evidence or the presently desired method of testing DNA were not available to the defendant at the time of trial or a court has found ineffective assistance of counsel at the trial court level;

(9) The motion is not made solely for the purpose of delay.

(g) If the court grants the motion for DNA testing, the court order shall identify the specific evidence to be tested and the DNA technology to be used. Testing shall be conducted by a DNA forensic laboratory in this state.

(h) The result of any testing ordered under this section shall be fully disclosed to the person filing the motion and the prosecuting attorney. If requested by any party, the court shall order production of the underlying laboratory data and notes.

(i) If testing was requested by the state or the individual is an indigent, the cost of DNA testing shall be borne by the state.

(j) An order granting or denying a motion for DNA testing under this section is not to be appealable and is subject to review only through a petition for writ of mandamus or prohibition filed with the supreme court of appeals by the person seeking DNA testing or

23

the prosecuting attorney. The petition shall be filed within twenty days of the court's order granting or denying the motion for DNA testing. The court shall expedite its review of a petition for writ of mandamus or prohibition filed under this subsection.

(k) DNA testing ordered by the court pursuant to this section shall be done as soon as practicable. However, if the court finds that a miscarriage of justice will otherwise occur and that it is necessary in the interests of justice to give priority to the DNA testing, the court may require the DNA laboratory to give priority to the DNA testing ordered pursuant to this section over the laboratory's other pending casework.

(l) DNA profile information from biological samples taken from a convicted person pursuant to a motion for post-conviction DNA testing is exempt from any law requiring disclosure of information to the public.

(m) Notwithstanding any other provision of law, the right to file a motion for post-conviction DNA testing provided by this section is absolute and may not be waived. This prohibition applies to, but is not limited to, a waiver that is given as part of an agreement resulting in a plea of guilty or nolo contendre.

58. "The clear import of *Zain III* [*In the Matter of Renewed Investigation of the State Police Crime Laboratory*, 219 W.Va. 408 (2006)] is that the evidence sought to be tested must likely produce an opposite result if a new trial were to occur. A defendant simply cannot make unsupported and blanket allegations and expect a circuit court to grant him a new trial. A conclusion to the contrary defies any sense of judicial efficiency and economy and would lead to needless multiple trials. Therefore, we now hold that this Court's ruling in *In the Matter of Renewed Investigation of the State Police Crime Laboratory*, 219 W.Va. 408, 633 S.E.2d 762 (2006), does not afford every petitioner with alleged serology issues the right to additional DNA testing. In order to have the right to additional DNA testing, the evidence sought to be tested must likely produce an opposite result if a new

0144 404

trial were to occur, and the evidence cannot be such that its purpose is merely to impeach or discredit a State's witness. *State ex rel. Burdette v. Zakaib*, 224 W.Va. 325, 332 (2009).

59. "[The West Virginia Supreme Court of Appeals] also recognizes that the petitioner's reliance on W. Va.Code § 15-2B-14 is misplaced. As is the case with *Zain III*, W. Va.Code § 15-2B-14 does not mandate testing in every criminal case and states that: 'A person convicted of a felony currently serving a term of imprisonment may make a written motion before the trial court that entered the judgment of conviction for performance (DNA) testing.' W. Va.Code § 15-2B-14(a). It further explains that 'the right to file a motion for post-conviction DNA testing ... is absolute and may not be waived.' W. Va.Code § 15-2B-14(m). Thus, in accordance with West Virginia Code § 15-2B-14 (2004), the West Virginia Legislature provides a defendant the absolute right to ask for DNA testing; however, it does not provide a defendant the absolute right to have DNA testing conducted. A petitioner seeking DNA testing must do more than make an unsupported allegation that he or she is entitled to such testing." *State ex rel. Burdette v. Zakaib*, 224 W.Va. 325, 333 (2009)

60. In Burdette, DNA testing was performed, but the Petitioner wanted *additional* testing. Here, the testing was never performed in the first place.

61. West Virginia Code § 15-2B-14(f), provides that the Court "shall grant the motion" for DNA testing if all the conditions of that subsection are met. However, under West Virginia Code § 15-2B-14(f)(8), the Court would have to find that the testing was not available at the time of trial or the Petitioner's



counsel was ineffective. As discussed above, the Court denied the Petitioner's ineffective assistance of counsel claim and, as admitted by the Petitioner, DNA testing was available when he had his trial. As such, the Petitioner is not entitled to testing under said subsection. Thus, the decision is within the Court's discretion.

62. It is important to note, that the decision of the Mr. Nelson's trial counsel not to have the DNA tested appears to have been one of strategy. The State has asserted that the DNA sample was mixed and would not have proven to be conclusive. It appears that Mr. Nelson's trial counsel thought it effective trial strategy to make the argument that the State had no DNA evidence linking Mr. Nelson to the crime. In fact, during his closing argument, Petitioner's trial counsel stated "there is no physical evidence to connect Clinty Nelson. There's no semen indicating rape." Thus, trial counsel felt it best to argue the State's lack of evidence, rather than testing the sample and being tied down to the result.

63. The Court FINDS that the DNA sample taken from the victim was not tested prior to trial.

64. The Court FINDS that the Petition fails under West Virginia Code § 15-2B-14(f)(8).

65. The Court FINDS that the decision of Mr. Nelson's trial counsel not to test the DNA sample was strategically made and the Petitioner now collaterally seeks an opposite strategy than that exercised in the underlying trial.

66. Thus, the Petitioner's request to have the DNA tested is DENIED. The Court hereby ORDERS that the DNA sample be submitted for testing.

26

CIVIL ORDER
BOOK

0144 106

## Judgment

Based upon the foregoing Findings Of Fact And Conclusions Of Law, the Petition is hereby **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to all parties of record.

Enter: this _____14____ day of March 2011.

Honorable Michael Thornsbury

Chief Judge, 30th Judicial Circuit

27